1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Donn A. Devore, et al.,                    No. CV-14-08063-PCT-DLR

10                    Plaintiffs,               **ORDER**

11  v.

12  Nationstar Mortgage LLC, et al.,

13                    Defendants.

14

15

16          Before the Court is Defendant Nationstar Mortgage LLC's ("Nationstar") Motion

17  to Dismiss.  (Doc. 22.)  The Court has reviewed the motion, Plaintiffs Donn A. Devore

18  and Shellee L. Devore's ("the Devores") response, (Doc. 23), Nationstar's reply, (Doc.

19  24), the Devores' notices of supplemental legal authority, (Docs. 25, 29), and the parties'

20  presentations at oral argument.  For the following reasons, Nationstar's motion is granted

21  in part and denied in part.

22                              **BACKGROUND[1]**

23          The Devores assert six claims against Nationstar.[2]  Counts Two, Three, and Five

24
25          [1] On a motion to dismiss, the well-pled factual allegations in the complaint are
    taken as true.  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  Accordingly, for
26  purposes of this order, the relevant factual background is taken from the complaint, as
    well as any documents properly subject to judicial notice.

27          [2] The Devores also named CTX Mortgage Company, Clear Recon Corporation,
28  and Bank of America, N.A., as defendants.  (Doc. 15 at ¶¶ 4–6.)  The Devores do not,
    however, assert any claims against CTX Mortgage Company (*see id.* at 16, 23, 25, 30, 31,
    32).  Furthermore, with the exception of Nationstar, all other named defendants

allege negligence per se, violations of A.R.S. § 33-420 (Arizona's false recordings statute), and breach of contract,[3] respectively, and concern Nationstar's authority to conduct a non-judicial foreclosure sale and the accuracy of certain recorded documents relating to their home loan.  Counts One, Four, and Six allege violations of the Arizona Consumer Fraud Act ("ACFA"), promissory estoppel, and negligent performance of an undertaking, and are based on representations Nationstar allegedly made to the Devores about a home loan modification.

## I.  The Devores' Home Loan

In December 1993, the Devores financed the purchase of their home with a loan ("the Note") from CTX Mortgage Company ("CTX").  (Doc. 15 at ¶ 16.)  The Note was secured by a Deed of Trust ("DOT") that the Devores executed in favor of CTX.  (*Id.*)  At origination, CTX was identified as the lender on both the Note and the DOT.  (*Id.* at ¶¶ 18, 50.)

The Devores allege that CTX was a residential mortgage broker related to Centex Builders, that it originated loans in bulk, and that, "upon information and belief," CTX did not hold the loans it originated in portfolio.[4]  (*Id.* at ¶ 18.)  They further allege, again "upon information and belief," that the Note was transferred to a Mortgage Backed Securities ("MBS") trust in 1994, shortly after origination.  (*Id.* at ¶ 51.)

The Note and DOT have been assigned four times since origination.  Shortly after origination, CTX assigned its interest in the Note and DOT to American Home Funding, Inc. ("AHF"), which was recorded on April 7, 1994 ("the First Assignment").  (Doc. 15 at Ex. B.)  On December 16, 1996, AHF recorded an assignment conveying its interest in the Note and DOT to Mellon Mortgage Company ("Mellon") ("the Second

---

previously were dismissed for lack of service.  (*See* Doc. 26.)  Accordingly, Nationstar is the only remaining defendant in this lawsuit.

[3] Count Five is styled as "Breach of the Note and Deed of Trust."

[4] "In a traditional mortgage lending relationship, a lender makes a loan, retains the loan in its portfolio, and services the loan itself."  Adam J. Levitin & Tara Twomey, *Mortgage Servicing*, 28 Yale J. on Reg. 1, 11 (2011).

1   Assignment").[5]   (Doc. 15 at Ex. C.)   The Devores allege that the Second Assignment[6]

2   was executed "by a low-to-mid-level employee of the notorious DocX robo-signing

3   factor, claiming to be 'Assistant Secretary of [AHF] . . . ." (Doc. 15 at ¶ 78.)

4   Mellon thereafter assigned the Note and DOT to Bank of America, FSB, as

5   recorded on October 5, 1998 ("the Third Assignment").   (Doc. 15 at Ex. D; Doc. 31.)

6   Finally, on January 11, 2013, Bank of America, N.A.[7] recorded an assignment conveying

7   its interest in the Note and DOT to Nationstar ("the Fourth Assignment").   (Doc. 15 at

8   Ex. E; Doc. 32.)   The Devores allege that the Fourth Assignment was signed by David

9   DeWaard as Assistant Vice-President of Bank of America, N.A., that Mr. DeWaard

10  signed numerous other assignments around the same time, and that Mr. DeWaard's

11  signatures appear visibly different on the various assignments that he purported to sign.

12  (Doc. 15 at ¶¶ 73, 74.).

13  At some point between August 2011 and August 2012,[8] the Devores defaulted.

14  (*Id.* at ¶¶ 22–24.)   On February 22, 2013, after numerous attempts by the Devores at

15  negotiating a home loan modification (discussed in more detail *infra*), Nationstar

16

17  [5] The Devores allege that Mellon "did not keep a private portfolio on its own

18  books," and that it was assigned only servicing rights by AHF.   (Doc. 15 at ¶¶ 63, 65.)
    The Devores do not, however, allege the facts that form the basis of this belief.   The
    Second Assignment clearly states that AHF assigned the beneficial interest in the Note

19  and DOT to Mellon.   The Devores allege no facts suggesting otherwise.   Instead, from
    their allegation that Mellon generally did not keep a private portfolio, they extrapolate

20  that it must have acquired only servicing rights.   Without some basis in fact, this is mere

21  speculation.

    [6] The complaint refers to the Fourth Assignment in this paragraph.   However,

22  AHF assigned its interests in the Second Assignment and was not a party to the Fourth

23  Assignment.   The Court presumes that reference to the Fourth Assignment was
    inadvertent.

24  [7] Although the Devores contend that Bank of America, N.A., appeared outside the

25  chain of title, they seem to suggest at paragraph 169 of their complaint that Bank of
    America, FSB was a predecessor in interest to Bank of America, N.A.

26  [8] The Devores allege that they "fell a little behind on their regular payments"

27  during the time that they were attempting to obtain a home loan modification.   (Doc. 15
    at ¶ 23.)   They allege that they first applied for a loan modification on August 30, 2011,

28  but were denied.   (Doc. 15 at ¶ 22.)   The further allege that from July 17, 2012 to July 24,
    2012, they applied a second time.   (Doc. 15 at ¶ 23.)   It is unclear when, during this
    roughly one-year period, the Devores first defaulted.

appointed David W. Cowles as Successor Trustee, who then noticed a trustee's sale for May 24, 2013.  (Doc. 22 at Exs. 2, 3.)   A Cancellation of Trustee's sale was recorded on April 24, 2014.   (Doc. 22 at Ex. 4.)   Thereafter, Nationstar appointed Clear Recon Corporation ("Clear") as successor trustee, as recorded on January 3, 2014.  (Doc. 22 at Ex. 5.)  Clear recorded a Notice of Trustee's Sale, setting the sale for April 9, 2014. (Doc. 22 at Ex. 6.)

On April 8, 2014, the Devores filed a complaint and an Application for a Temporary Restraining Order and Preliminary Injunction pursuant to A.R.S. § 33-811(C) in the Arizona Superior Court for Coconino County.  (Doc. 1-1 at 34.)  That same day, the court granted the Devores' request to temporarily enjoin Nationstar and Clear from conducting the trustee's sale.   (Doc. 1-1 at 47.)   Thereafter, Nationstar removed the matter to this Court.  (Doc. 1.)

**II.  The Devores' Loan Modification Efforts**

Between 2011 and 2014, the Devores made efforts to modify their home loan. (Doc. 15 at ¶ 19.)  On August 30, 2011, after experiencing financial difficulties, the Devores applied for a loan modification with Bank of America, N.A., but were denied. (*Id.* at ¶ 22.)  They applied a second time in July 2012, but were again denied.  (*Id.* at ¶ 23.)  During this time, they fell behind on their mortgage payments.  (*Id.* at ¶ 24.)  On August 31, 2012, the Devores sent a check for $1,193.39, which Bank of America, N.A. returned because it was not the total amount due.  (*Id.* at ¶ 24.)  In September 2012, Ms. Devore spoke with Bank of America, N.A. loan specialist Shirl Whipley about their latest modification application and was informed that their loan was in foreclosure.  (*Id.* at ¶ 25.)

In October 2012, Bank of America, N.A. sent the Devores a letter informing them that servicing was transferring to Nationstar.  (*Id.* at ¶ 26.)  Ms. Devore called Nationstar in November 2012 and spoke with an employee named Anthony, who told her that she could send in three payments to bring the loan out of active foreclosure.  (*Id.* at ¶ 27.) The Devores do not allege that they complied with this instruction.  In December 2012,

Ms. Devore spoke with Kyle at Nationstar about the status of their account.  (*Id.* at ¶ 28.)  Kyle told her that Nationstar was due seven payments, but that she could send in four payments and submit a new Nationstar modification package.  (*Id.*)  The Devores do not allege that they complied with this instruction.  Finally, in February 2013, Ms. Devore spoke with Greg at Nationstar, who said they were eight payments behind, but that they could send in $7,178.34 to stop foreclosure.  (*Id.* at ¶ 29.)  The Devores thereafter sent Nationstar a check for $7,178.34.  (*Id.* at ¶ 30.)

In March 2013, Ms. Devore called Nationstar to ask why the $7,178.34 was not showing on their account.  (*Id.* at ¶ 31.)  Nationstar employee Javier said that Nationstar received the check and instructed Ms. Devore to call back the following Monday to see if it had posted.  (*Id.*)  Javier also represented that he was authorized to stop foreclosure now that Nationstar had received the payment.  (*Id.*)  Approximately a week later, Ms. Devore called back and spoke with Nationstar employee Rachel, who informed her that Nationstar needed two more payments by March 30, 2013, or foreclosure would proceed.  (*Id.* at ¶ 32.)  Rachel stated that the Devores were still four payments behind and owed $5,188.00, but could send in $2,392.78.  (*Id.*)

On March 25, 2013, before sending in another payment, Ms. Devore called Nationstar to verify the amount she and her husband needed to pay.  (*Id.* at ¶ 33.)  Nationstar employee Edward told her that they owed four payments, but could send in two payments, and instructed them to make a $2,392.78 payment.  (*Id.* at ¶ 33.)  Edward represented that, upon receipt of the payment, Nationstar would offer a repayment plan that would allow the Devores to pay arrears over the next three months.  (*Id.* at ¶ 34.)  The Devores sent Nationstar $2,392.78.  (*Id.* at ¶ 35.)  Nationstar did not, however, offer a repayment plan.  (*Id.* at ¶ 36.)  Instead, on February 22, 2013, Nationstar ordered the trustee to record a trustee's sale.  (*Id.* at ¶ 37.)

In October 2013, Ms. Devore called Nationstar to again ask about a loan

modification.[9]  (*Id.* at ¶ 38.)  Nationstar employee Amber told her to apply for another modification.  (*Id.*)  The Devores applied and were denied.  (*Id.*)  In November 2013, Ms. Devore called Nationstar and spoke with Rachel, who said that they owed $9,928.32 and could "set up an agreement to repay."  (*Id.* at ¶ 39.)  Later that month, Nicole at Nationstar told Ms. Devore that Nationstar could set up a repayment program to stop foreclosure, but that they must make a payment by November 30, 2013.  (*Id.* at ¶¶ 40–41.)  Nationstar was closed on November 29 and 30, 2013, due to the Thanksgiving holiday.  (*Id.* at ¶ 41.)

Ms. Devore called Nationstar on December 3, the next business day, to make arrangements to pay, but Nationstar did not return the call.  (*Id.* at ¶ 42.)  On December 10, 2013, Ms. Devore spoke with Kyle at Nationstar, who told her that it was too late to set up a repayment plan.  (*Id.* at ¶ 43.)  Ms. Devore called again on December 18, 2013, and spoke with Patricia, who said that she had to check with Kyle about a new payment plan and assured that she would call the Devores back.  (*Id.* at ¶ 44.)  Patricia never called back.  (*Id.*)

Instead, on January 3, 2014, Nationstar ordered Clear to record a new Notice of Trustee's sale, setting the sale date for April 9, 2014.  (*Id.* at ¶ 45.)  The Devores called Nationstar to ask about options to stay in their home.  (*Id.* at ¶ 47.)  Nationstar informed them that they could not stop foreclosure because it was too close to the trustee sale date.  (*Id.*)  The Devores allege that Nationstar had no intention of ever offering them a loan modification.  (*Id.* at ¶ 106.)

## ANALYSIS

Nationstar has moved to dismiss the Devores' complaint pursuant to Federal Rules of Civil Procedure 8, 9, and 12(b)(6).  (Doc. 22 at 1.)

### I. FRCP 8

Rule 8 requires the Devores to "plead a short and plain statement of the elements

---

[9] The Devores do not include any allegations to explain what happened between February and October 2013.  Thus, it is unknown whether the Devores made any additional payments or had any additional contact with Nationstar during this time.

of [their] claim[s], identifying the transaction[s] or occurrence[s] giving rise to the claim[s] and the elements of the prima facie case . . . ." *Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 840 (9th Cir. 2000).  Moreover, "[e]ach allegation must be simple, concise, and direct."  FRCP 8(d)(1).

The Devores' complaint spans thirty-nine pages and is far from short, plain, simple, concise, and direct.  It contains numerous speculative statements, (*see* Doc. 15 at ¶¶ 55 ("Even if a Defendant is found to have possession of a Note, the Note may not be negotiable because it contains terms that undermine its certainty of terms under the U.C.C."), 65 ("Mellon Mortgage assigned whatever beneficial interest in the Deed of Trust that it had, as an agent untethered by authority from a disclosed principal.  This was likely no interest."), 70 ("[T]he Fourth Assignment was false because, if the Deed of Trust followed the Note, BANA did not own the Note if it was in the MBS Trust, locked down more than ten years prior.")), and is littered with legal conclusions alleged as facts, (*see id*. at ¶¶ 52 ("The typical Trust Agreement for an investor backed pool of securitized residential mortgage loans specifies the Trust's creation and the terms and the obligations of the multiple parties.  Predictably, all of the Notes in the specified pool of Notes being securitized must be transferred immediately and very specifically in a certain order, with commensurate formalities observed, to be legal, and to satisfy the strict requirements of the IRS to be privileged by favorable tax treatment, which is the point of a REMIC Trust."), 82 ("In Arizona, the notice of substitution of trustee and notice of trustee's sale create an interest in real property necessary for those identified to non-judicially foreclose on a borrower's property.  Because a successor trustee has such sweeping power over such an important interest as one's ownership interest in a home, A.R.S. § 33-420 necessarily applies to notices of substitution of trustee and notices of trustee's sale to provide a remedy for the recording of false instruments."), 178 ("It is per se material to record false documents because it is a civil statutory violation of the type that the Legislature sought to prohibit, and also a crime.")).  Additionally, the complaint includes contradictory factual allegations, (*see id.* at ¶¶ 54, 57, 60), as well as generalized

criticisms of the mortgage lending industry, (*see id.* at ¶ 79).

Although the Devores' complaint is lengthy, verbose, and includes speculative, conclusory, and irrelevant information, it nonetheless manages to state the bases for the asserted claims, and the Court does not find it so deficient as to warrant dismissal for failure to comply with Rule 8.

## II. FRCP 9

Rule 9(b) requires allegations of fraud to be pled with particularity. "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). As discussed in more detail in Part III, *infra*, although the Devores' ACFA claim fails to satisfy Rule 12(b)(6), it is nonetheless pled with sufficient particularity for purposes of Rule 9(b).

## III. FRCP 12(b)(6)

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). To avoid dismissal, the complaint must plead sufficient facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

### A. Recording False Documents in Violation of A.R.S. § 33-420 (Count Three)

Arizona law prohibits a person purporting to claim an interest in real property from recording or causing to be recorded a document that the person knows or should

know is forged, groundless, contains a material misstatement or false claim, or is otherwise invalid.  A.R.S. § 33-420(A).  "The purpose of A.R.S. § 33-420 is to protect property owners from actions clouding title to their property."  *Stauffer v. U.S. Bank Nat. Ass'n*, 233 Ariz. 22, 28 ¶ 25, 308 P.3d 1173, 1179 (Ct. App. 2013).  A deed of trust and notice of trustee's sale are recorded documents that assert interests in real property.  *See id.* at 26 ¶ 12, 308 P.3d at 1177.  The only documents alleged to have been recorded or caused to be recorded by Nationstar are two notices of substitution of trustee and two notices of trustee's sale.[10]  (Doc. 15 at ¶¶ 170–73; Doc. 22 at Exs. 2–6.)  The Devores allege that these documents were materially false because they were recorded by or on behalf of Nationstar, who allegedly is not a beneficiary of the DOT.  (*Id.*)

As the Court understands it, the Devores' false recording claim is premised on three theories:  (1) the original lender, CTX, sold the Note to some other entity shortly after origination and, therefore, none of the other entities subsequently assigned the Note and DOT (including Nationstar) had any interest in the property because CTX had no remaining interest to convey; (2) certain assignments contained forged signatures; and (3) Bank of America, N.A. appears outside the chain of title.

### i.  Allegations of Sale After Origination

The Devores' false recordings claim largely is premised on speculative allegations that CTX sold their Note to a MBS trust or some other entity shortly after origination. Because the Devores believe CTX sold its interest in the Note to some other entity shortly after origination, they argue that AHF could not have obtained any interest in the Note or DOT from the first assignment and, consequently, all other subsequent assignments similarly were defective as no party in the chain of title had any interest to convey.  (*See id.* at ¶¶ 164–65, 168–69.)  Correspondingly, they argue that Nationstar could not properly record documents purporting to be the DOT beneficiary because it did not obtain any interest in the Note or DOT.  (*See id.* at ¶¶ 170–173.)  However, the

---

[10] The Devores allege that numerous other documents were falsely recorded by CTX, AHF, Mellon, and Bank of America, N.A., but none of those entities are parties to the present motion, nor do any remain parties to this litigation.

1    Devores fail to plead sufficient facts to support this theory.

2        The Devores allege that CTX was a residential mortgage broker related to Centex

3    Builders, that it originated loans in bulk, and that, "upon information and belief," CTX

4    did not hold the loans it originated in portfolio.  (*Id.* at ¶ 18.)   The Devores do not,

5    however, allege the facts that form the basis for this belief.   They further allege, again

6    "upon information and belief," that the Note was transferred to a MBS trust in 1994,

7    shortly after origination.   (*Id.* at ¶ 51.)   The Devores do not identify the MBS trust to

8    which they believe their Note was transferred, nor is any MBS trust identified in the

9    relevant land records or named as a defendant.   Moreover, at certain points, the Devores

10   allege that CTX's alleged attempt to transfer their Note to a MBS trust was botched and,

11   as a result, the alleged MBS trust does not and never did legally own their Note.  (*Id.* at

12   ¶¶ 54, 57, 60.)   At other times, they appear to allege that the Note was legally conveyed

13   to a MBS trust.  (*Id.* a ¶¶ 70, 75.)   The complaint is internally inconsistent on this point.

14   Although the federal rules allow litigants to plead alternative legal theories based on the

15   alleged facts, they do not allow a litigant to allege alternative, contradictory facts.

16       The crux of the Devores' theory is that CTX must have sold the Note to some

17   entity shortly after origination because it customarily did not hold loans it originated in

18   portfolio.   However, the Devores do not allege any facts or articulate any arguments to

19   explain how CTX's assignment of the Note and DOT to AHF in 1994 is inconsistent with

20   the allegation that CTX did not hold loans in portfolio.   Indeed, assuming the Devores are

21   correct that CTX did not hold loans in portfolio, the land records show that shortly after

22   origination, CTX sold its interest in the Note and DOT to AHF.  (Doc. 15 at Ex. B.)   To

23   the extent the Devores are arguing that CTX sold the Note to some other entity prior to

24   conveying its interest to AHF, they have failed to articulate any factual allegations to

25   make such a theory plausible.   The Devores cannot make baseless accusations about

26   securitization or other unrecorded transfers without a good-faith basis, grounded in fact.[11]

27

28       [11] Moreover, assuming Nationstar acquired no interest in the Note or DOT because
     CTX sold the Note to some other entity outside the chain of title, the Devores fail to
     allege any facts showing that Nationstar knew or should have known of this previous,

### ii.  Allegations of Forgery

The Devores also allege that three assignments were forged.  First, they allege that the Second Assignment was executed "by a low-to-mid-level employee of the notorious DocX robo-signing factor, claiming to be 'Assistant Secretary of [AHF] . . . ." (Doc. 15 at ¶¶ 78, 165.)  Next, they allege that the Third Assignment "was signed by a known robo-signer, Sherry Doza, who did not have the authority to transfer Mellon's . . . real property interests."  (*Id.* at ¶ 167.)  Finally, the Devores allege that the Fourth Assignment was signed by David DeWaard as Assistant Vice-President of Bank of America, N.A., that Mr. DeWaard signed numerous other assignments around the same time, and that Mr. DeWaard's signatures appear visibly different on the various assignments that he purported to sign.  (*Id.* at ¶¶ 73, 74.)

However, the Devores fail to allege any facts supporting the legal conclusion that the persons signing the Second and Third Assignments lacked authority to transfer the property interests of the entities on whose behalf they purported to sign.  Furthermore, the motion to dismiss is filed on behalf of Nationstar, who is the only remaining defendant in this lawsuit.   The Devores do not allege that Nationstar forged any documents.  Moreover, assuming that the Second, Third, and Fourth Assignments were forged, the Devores do not allege facts showing that Nationstar knew or should have known about the forgeries.

### iii.  Chain of Title

In 1998, Mellon assigned the Note and DOT to Bank of America, FSB.  (Doc. 15 at Ex. D.)  In 2013, Bank of America, N.A. recorded an assignment conveying its interest in the Note and DOT to Nationstar.  (Doc. 15 at Ex. E.)  Based this name change, the Devores allege that the Fourth Assignment was "false" because Bank of America, N.A. appears outside the chain of title.  (Doc. 15 at ¶ 169.)

---

unrecorded transfer, or that it was not a beneficiary of the DOT.   Absent factual allegations plausibly showing that Nationstar had reason to know that it did not acquire any interest in the Note or DOT through the Fourth Assignment, Nationstar could not have violated A.R.S. § 33-420(A).

1   Assuming that the discrepancy between the Third and Fourth Assignments

2   represents a break in the chain of title, the Devores have failed to connect Nationstar's

3   actions to this false recording.   Nor do the Devores allege any facts showing that

4   Nationstar knew or should have known that Bank of America, N.A. did not succeed to the

5   interests of Bank of America, FSB.[12]

6   ### iv.  Conclusion

7   For the foregoing reasons, the complaint fails to state a plausible claim against

8   Nationstar for violating A.R.S. § 33-420(A).   Count Three is dismissed.

9   ### B.  Negligence Per Se (Count Two)

10   The Devores allege that Nationstar committed negligence per se by allegedly

11   violating A.R.S. §§ 39-161, 13-2320, and 13-420(A).   (Doc. 15 at ¶¶ 144–46.)   The

12   alleged statutory violations are premised on the same allegations of false recordings that

13   form the basis of the Devores' Count Three claim.   Specifically, they allege that

14   Nationstar knowingly recorded false documents claiming an interest in their real

15   property.  (*Id.* at ¶ 145.)  Because the Devores' negligence per se claim suffers the same

16   defects as their claim under A.R.S. § 13-420(A), it must be dismissed.

17   ### C.  Breach of the Note and Deed of Trust (Count Five)

18   The Devores allege that Nationstar breached the provisions of the Note and DOT

19   when it elected to conduct a trustee's sale because only the true lender/DOT beneficiary

---

20

21   [12] Further, the Devores indicate in their complaint that Bank of America, FSB
might be a predecessor to Bank of America, N.A. (*See id.* ("Even predecessor Bank of

22   America, FSB had no ownership interest in the Note or Deed of Trust to assign, even if a
link had been demonstrated.")).  In a demonstrative exhibit supplied for oral argument,

23   Nationstar identified Bank of America N.A. as a successor by merger to Bank of
America, FSB.  In ruling on a motion to dismiss, the Court must look only to the facts

24   alleged in the complaint and to any documents properly subject to judicial notice.  No
party has supplied a document properly subject to judicial notice that confirms whether

25   Bank of America, N.A. is successor by merger to Bank of America, FSB.  However,
representations by the Devores in their complaint and by Nationstar during oral argument

26   cast doubt on whether the discrepancy truly represents a break in the chain of title.  If
such information is readily available or easily uncovered through cursory investigation,

27   the Court expects counsel for the Devores, consistent with FRCP 11, to conduct a
reasonable investigation into the matter before filing an amended complaint that pursues

28   this theory.  The Devores may not manufacture a facial break in the chain of title by
failing to reasonably investigate whether a merger or other manner of corporate name
change explains the discrepancy.

can elect to foreclose, and—according to the Devores' defective chain-of-title theory—Nationstar is not the DOT beneficiary. (*Id.* at ¶¶ 199–202.) This claim, again, is premised on the same baseless theory that Nationstar did not properly acquire an interest in the Note and DOT. The Devores' claims are contradicted by the Coconino County land records, and they have alleged no concrete facts supplying a good-faith basis for challenging the accuracy or authenticity of the recorded chain of title.[13] Accordingly, Count Five is dismissed.

### D.  Arizona Consumer Fraud Act (Count One)

The ACFA prohibits:

> [t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby . . . .

A.R.S. § 44-1522(A). "Merchandise" is defined as "any objects, wares, goods, commodities, intangibles, real estate or services . . . ." A.R.S. § 44-1521(5).

To state a claim under the ACFA, the Devores must allege that Nationstar made a false promise or misrepresentation in connection with the sale or advertisement of merchandise, and that they were consequently and proximately injured by the promise or misrepresentation.[14] *Kuehn v. Stanley*, 208 Ariz. 124, 129 ¶ 16, 91 P.3d 346, 351 (Ct. App. 2004). "An injury occurs when a consumer relies, even unreasonably, on false or misrepresented information." *Id.* Moreover, because an ACFA claim sounds in fraud, its

---

[13] The Court also notes that this claim is internally inconsistent. The Devores allege throughout their complaint that Nationstar never acquired an interest in the Note or DOT. They repeat this allegation in Count Five. (Doc. 15 at ¶ 207.) The Devores cannot allege that the recorded assignment conveying the Note and DOT to Nationstar is false and that Nationstar has no interest in either instrument, and simultaneously argue that Nationstar breached the terms of an instrument to which it is not, under the Devores' theory, a legal party.

[14] Although damage is not an essential element of an ACFA violation, damage is required to succeed in a private cause of action under the statute. *See Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 576, 521 P.2d 1119, 1122 (Ariz. 1974).

1    elements must be pled with particularity pursuant to FRCP 9(b).  *See Williamson v.*

2    *Allstate Ins. Co.*, 204 F.R.D. 641, 643–44 (D. Ariz. 2001).

3         The Devores allege that Nationstar made misrepresentations in connection with

4    loan restructuring services.  (Doc. 15 at ¶¶ 104–05.)  In its motion to dismiss, Nationstar

5    mistakenly assumes that the Devores' ACFA claim is premised on allegations that

6    Nationstar lacks authority to conduct a trustee's sale.  (Doc. 22 at 10.)  Instead, the

7    Devores allege that Nationstar, through various employees, made a series of

8    misrepresentations concerning the requirements, process, and procedures for obtaining a

9    loan modification or other foreclosure avoidance relief.  Specifically, the Devores allege

10   that various Nationstar employees gave conflicting information about the amount of

11   arrears the Devores would need to pay to be considered for loan modification or

12   forbearance, and that receipt of partial payments would stop foreclosure.  (Doc. 15 at

13   ¶¶ 108–25.)  Moreover, the Devores allege that, as a result of these misrepresentations,

14   they faced constant stress of imminent foreclosure, had to pay various legal fees in

15   obtaining a temporary restraining order enjoining the trustee's sale, forewent other

16   possible avenues of foreclosure avoidance relief, and now stand to lose the equity in their

17   home if it is sold at a reduced price at a trustee's sale.  (*Id.* at ¶¶ at 126–29, 134.)

18        Nationstar also argues that the Devores' ACFA claim is barred by the statute of

19   limitations.   (Doc. 22 at 11.)   ACFA claims are subject to a one-year statute of

20   limitations.  *See* A.R.S. § 12-541(5).  The Devores argue that Nationstar did not tell them

21   that it was too late to set up a modification agreement until December 10, 2013, less than

22   a year before this suit was filed.  (Doc. 23 at 10; Doc. 15 at ¶ 135.)  Moreover, they argue

23   that dismissal is inappropriate because the one-year limitations period might be equitably

24   tolled based on late discovery of the misrepresentations.  (Doc. 23 at 10; Doc. 15 at

25   ¶¶ 134–35.)

26        "[A] complaint cannot be dismissed unless it appears beyond doubt that the

27   plaintiff can prove no set of facts that would establish the timeliness of the claim."  *Von*

28   *Saher v. Norton Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2009).  At this

stage, the Court cannot determine beyond doubt that the Devores can prove no set of facts that would establish the timeliness of their ACFA claim.  Accordingly, the statute of limitations does not supply an appropriate basis for dismissal.

However, Nationstar also argues that the alleged misrepresentations were not made in connection with the sale or advertisement of merchandise.  (Doc. 22 at 11 n.14.)  The Court agrees.  Money lending is merchandise for purposes of the ACFA.  *See Davis v. Bank of America Corp.*, No. CV-12-01059-PHX-NVW, 2012 WL 3637903, at *5 (D. Ariz. Aug. 23, 2012) ("A loan of money may be a 'sale of merchandise' because 'it is the sale of the present use of money on a promise to repay in the future.'") (quoting *Villegas v. Transamerica Fin'l Servs.*, 147 Ariz. 100, 102, 708 P.2d 781, 783 (Ct. App. 1985)).  This case, however, does not involve the sale or advertisement of a loan.  Instead, the conduct of which the Devores complain consists of statements made by Nationstar in connection with efforts to modify the repayment schedule for an already existing debt.  Nationstar's alleged misrepresentations do not relate to the sale or advertisement of merchandise, but instead to modifying the payment schedule for merchandise previously purchased.

Moreover, even assuming that "loan restructuring services" could be considered "merchandise" under the ACFA, the Devores fail to plead facts showing that Nationstar tried to sell or advertise these services to the Devores.  The only payments Nationstar received from the Devores were arrears on their Note.  The Devores already owed these sums under the terms of their Note and, therefore, did not pay these sums as consideration for loan restructuring services.  Further, although the Devores allege that Nationstar generically advertised its desire "to help homeowners avoid foreclosure," they do not allege that Nationstar's statements to them were made in connection with an advertisement.  To the contrary, these statements were made in response to inquiries by the Devores.  Accordingly, because the Devores have failed to plead facts showing that Nationstar's allegedly false statements were made in connection with the sale or advertisement of merchandise, their ACFA claim is dismissed.

**E. Promissory Estoppel (Count Four)**

To state a claim for promissory estoppel, the Devores must plead sufficient facts showing that Nationstar made them a promise upon which it was reasonably foreseeable that they would justifiably rely, and that they, in fact, relied on that promise to their detriment. *See Higginbottom v. State*, 203 Ariz. 139, 144 ¶ 18, 51 P.3d 972, 977 (Ct. App. 2002). The Devores allege Nationstar represented that if they paid $7,178.34 and, later, $2,392.78, the parties would enter into a forbearance or loan modification agreement, which would allow for forgiveness or capitalization of any remaining arrearages, and that Nationstar would not institute a Trustee's Sale. (Doc. 15 at ¶¶ 29. 32, 33, 34, 188.) They further allege that they detrimentally relied on these representations when they paid the amounts Nationstar requested, (*id.* at ¶¶ 30, 35, 191), but Nationstar did not and never intended to offer a modification agreement and, instead, instituted a Trustee's Sale, (*id.* at ¶¶ 31, 32, 36, 37, 191). Additionally, the Devores allege that, but for Nationstar's promises that a repayment plan would be provided, they would have pursued other foreclosure avoidance options. (*Id.* at ¶¶ 132, 134.) For example, the Devores allege that they could have preempted foreclosure by selling their home, in which they allegedly have substantial equity exceeding the balance on the Note, thereby permitting them to satisfy their obligations under the Note while recovering their home equity.[15] (*Id.* at ¶ 134.)

Nationstar argues that the Devores suffered no detriment by making arrearage payments that they already owed. (Doc. 22 at 14.) The Court agrees. However, the Devores' allegation that they forewent other foreclosure avoidance options as a result of Nationstar's promise that a modification agreement would be forthcoming is sufficient detrimental reliance to state a claim for promissory estoppel.

---

[15] This allegation appears in the complaint under Count One, which alleges violations of the ACFA. (Doc. 15 at 16.) Although the Devores do not clearly articulate this theory under Count Four, when ruling on a motion to dismiss, the Court views the complaint as a whole. Accordingly, the Court will not dismiss the Devores' promissory estoppel claim simply because the allegations in the complaint are not optimally organized.

Finally, Nationstar argues that the Devores' promissory estoppel claim fails to the extent it relies upon alleged oral communications with Nationstar employees because a modification to the material terms of a loan must satisfy Arizona's Statute of Frauds. (Doc. 22 at 15.)  Under Arizona law, contracts for the sale of real property or an interest therein must be in writing and signed by the party to be charged.  A.R.S. § 44-101(6).  A mortgage is an interest in real property within the meaning of the Statute of Frauds.  *See Fremming Const. Co. v. Sec. Sav. and Loan Ass'n*, 115 Ariz. 514, 516, 566 P.2d 315, 317 (Ct. App. 1977).  Likewise, an agreement to modify the material terms of a mortgage loan also falls within the Statute of Frauds.  *See Best v. Edwards*, 217 Ariz. 497, 500–02, 176 P.3d 695, 698–700 (Ct. App. 2008).

"In Arizona, the doctrine of promissory estoppel applies to a contract otherwise barred by the Statute of Frauds only where a promise has been made not to rely on the Statute, that is, where the party asserting the Statute of Frauds defense has misrepresented that the statute's requirements have been met or promises to put the agreement in writing.*" Mullins v. S. Pac. Transp. Co.*, 174 Ariz. 540, 542, 851 P.2d 839, 841 (Ct. App. 1992) (internal quotation and citation omitted).  As the Court understands it, however, the Devores' promissory estoppel claim is not premised on Nationstar's failure to honor a specific modification agreement that was not reduced to writing.  Rather, the Devores allege that Nationstar failed to honor its promise to meaningfully engage in the modification process and to ultimately offer some form of foreclosure avoidance relief so long as the Devores made certain arrearage payments and, as a result, the Devores did not pursue other avenues of foreclosure avoidance relief prior to the trustee's sale.  Although a specific modification agreement—had one been offered—would need to be reduced to a signed writing to be enforceable against Nationstar, the Devores have sufficiently pled a claim for promissory estoppel based on allegations that Nationstar promised to meaningfully engage in the modification process and to offer some form of relief. Accordingly, to the extent the Devores' promissory estoppel claim is based on the theory herein described, the motion to dismiss is denied.

**F.  Negligent Performance of Undertaking (Count Six)**

Arizona, following the Restatement (Second) of Torts, recognizes a cause of action for negligent performance of an undertaking when "[o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, . . . fail[s] to exercise reasonable care to perform his undertaking . . . ." *Steinberger v. McVey ex rel. Cnty. of Maricopa*, 234 Ariz. 125, 137 ¶ 45, 318 P.3d 419, 431 (Ct. App. 2014) (quoting Restatement (Second) of Torts § 323 (1965)).  "Under this 'Good Samaritan Doctrine,' a party may be liable . . . by either (1) increasing the risk of harm to another, or (2) causing another to suffer harm because he or she relied on the party exercising reasonable care in undertaking the duty." *Id.* at ¶ 46.  Arizona "has extended the Good Samaritan Doctrine beyond ordinary physical harm to include economic harm." *Id.*     In the context of home loan modifications, the Arizona Court of Appeals has emphasized that that a negligent performance of an undertaking claim is limited to situations in which:

> (1) a lender, or its agent/representative, induces a borrower to default on his or her loan by promising a loan modification if he or she defaults; (2) the borrower, in reliance on the promise to modify the loan, subsequently defaults on the loan; (3) after the borrower defaults, the lender or its agent/representative negligently processes or fails to process the loan modification, or due to the lender/agent/representative's negligence, the borrower is not granted a loan modification; and (4) based on the default the lender subsequently forecloses on the borrower's property.

*Id.* at 138 ¶ 51, 318 P.3d at 432.

In articulating their negligent performance of an undertaking claim, the Devores make numerous allegations, many of which are reiterations of their ACFA and false recordings claims.  Many of these allegations either are irrelevant to or fail to form a legal basis for a negligent performance of an undertaking claim.  As relevant to this count, the Devores allege that Nationstar undertook to render loan modification services that it should have recognized were necessary for the protection of the Devores' home. (Doc. 15 at ¶ 209.)  They further allege that Nationstar failed to exercise reasonable care

when it made a series of differing and sometimes conflicting statements about the modification process, including that the submission of certain arrearage payments would result in a forbearance plan and would halt foreclosure.  (*Id.* at ¶¶ 211, 214–17.)  Moreover, the Devores allege that the amount of arrearages that needed to be paid to obtain foreclosure relief kept changing.  (*Id.* at ¶¶ 27–43.)  Finally, they allege that, in reliance on Nationstar's undertaking of modification services, they suffered credit damage and lost the opportunity to pursue other foreclosure avoidance relief.[16]  (*Id.* at ¶¶ 235–36.)

Notably absent from the complaint are any allegations that Nationstar induced the Devores to default by promising them a loan modification if they fell behind on their payments.  The Devores admit that they defaulted on their loan due to financial hardships, and, if anything, Nationstar induced them to *cure* their default.  Accordingly, the Devores have failed to state a plausible claim under the limited circumstances permitted by *Steinberger.*  Count Six is dismissed.

### G.  Quiet Title Relief

In addition to damages, the Devores request that the Court order Nationstar to mark the Note as satisfied and return it to them.  (Doc. 15 at 37, ¶ 8.)  Although the Devores do not allege a claim to quiet title, this demand amounts to nothing more than quiet title relief.  Arizona law does not permit a homeowner to quiet title as to the beneficiary of a deed of trust unless the debt on the home is paid or offered to be paid. *Farrell v. West*, 57 Ariz. 490, 491, 114 P.2d 910, 911 (1941).  The Devores admit that they defaulted on their loan and do not allege that they have paid or offered to pay the balance due on the Note.  The surviving cause of action for promissory estoppel allows

---

[16] Curiously, the Devores allege at paragraph 234 of the complaint that they lost eligibility for loan modification programs that are available only to homeowners who are not behind on payments.  However, the Devores admit that were in default and they do not allege that Nationstar caused them to miss payments.  Instead, the Devores allege that they fell behind on their payments due to various financial and health problems.  (Doc. 15 at ¶¶ 19–24.)  Thus, it is unclear to this Court how any of Nationstar's conduct could have resulted in lost eligibility for modification programs available only to homeowners who are not in default when the Devores admit that they defaulted because of financial hardships, not because of Nationstar's conduct.

1   recovery for damages.  The Devores have not stated any claim that permits the quiet title
2   relief they seek.[17]

3                                              **CONCLUSION**

4          For the foregoing reasons, Counts One, Two, Three, Five, and Six of the
5   complaint are dismissed.  Count Four may proceed.  During oral argument, counsel for
6   the Devores requested that the Court grant leave to amend should it determine that some
7   or all of the claims are insufficiently pled.  Local Rule of Civil Procedure 15.1 requires a
8   party moving for leave to amend to attach a copy of the proposed amended pleading as an
9   exhibit to the motion, which indicates the ways in which it differs from the pleading that
10  it amends.  The Devores' motion for leave to amend is denied without prejudice.  If the
11  Devores believe they can cure the defects identified in this order by pleading additional
12  facts, they may file a new motion for leave to amend that complies with LRCiv 15.1.
13  Should the Devores move to file an amending pleading, any allegations that Nationstar
14  lacks authority to foreclose under the Note and DOT, or that the Note and DOT
15  transferred differently than the county land records suggest, must be supported by facts
16  alleged in good-faith, rather than by mere speculation.  Accordingly,

17

18

19

20

21

22

23

24   _____

25      [17] The Arizona Court of Appeals has held that "an action to clear title of a false or
26   fraudulent document that asserts an interest in real property may be joined with an action
     for damages under [A.R.S.] § 33-420[A]."  *Stauffer v. U.S. Bank Nat'l Ass'n*, 233 Ariz.
     22, 27 ¶ 20, 308 P.3d 1173, 1179 (Ct. App. 2013).  However, the Devores have failed to
27   state a plausible claim under that section.  Moreover, *Stauffer* merely holds that A.R.S.  §
     33-420 allows a court to clear the chain of title of a fraudulent document.  It does not
28   authorize a court to declare that a note has been paid in full and to quiet title in favor of
     the borrower when the borrower is admittedly in default.

1    **IT IS ORDERED** that Nationstar's Motion to Dismiss (Doc. 22) is **GRANTED**

2    **IN PART** and **DENIED IN PART** as explained herein.

3    Dated this 11th day of March, 2015.

4

5

6

7    _____

8    Douglas L. Rayes
     United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28